we'll hear the first case. Good morning and may it please the court. I'm Jenny Ellickson for the United States. I'd like to reserve one minute for rebuttal. The district court abused its discretion in ordering the partial unsealing of the monitor's report in this case. The monitor's report is relevant to a core exercise of prosecutorial discretion, specifically the government's ultimate decision about whether to pursue or dismiss the criminal charges in this case. If it's just assuming hypothetically that the DPA was being implemented illegally or or unethically, would that be an appropriate basis for the exercise of the court's supervisory power? The court presumes, in the absence of clear evidence to the contrary, that the government is properly executing its official duties. And so if the government informs the court, as it has here, and in fact the government does not even have an obligation to inform the court, but if the government tells the court that it believes that HSBC is implementing the DPA in good faith, the district court accepts that absent clear evidence to the contrary. So if there's a question about whether the DPA was being implemented illegally or unethically, the court would not know of that unless the government so informed it. Well, the government or potentially HSBC or, yes. Is there an outside party or journalists or others who might become aware of facts relevant to such an issue? Yes, theoretically there could be there could be a member of the public who comes forward. It's it's it's hard to it's hard to imagine. There certainly has been no charge like that in this case. The government could have stayed out of court altogether, couldn't it? It could have negotiated separately with HSBC and not gone on the court's docket? Theoretically, perhaps the government could have done that, but the government theoretically they could they could have done it. It's not theoretical, right? They could have done a private agreement with HSBC without holding out the stick of prosecution. Yes, Your Honor, that's that's true. So didn't the government make an affirmative choice to be part of the judicial system? The government did decide to file this case on the docket of the court, but that does not mean that the court that the court inevitably has a supervisory authority over whether essentially core prosecutorial decisions. The court said, quoting a famous term, that it's not a potted plant. What is the court's role once you get on the court's docket? In the context of overseeing the government's exercise of prosecutorial discretion and discretion, the court has there there is, you know, little to no role for the court in that context. This is really analogous to a situation where the defendant and then the government and the defendant go off and have potentially a series of meetings to discuss terms of a plea or perhaps the defendant offers the government information and the government uses all of that to assess whether it's appropriate to continue with the criminal charges. When there's an individual defendant giving that defendant time to rehabilitate his him or herself, but here we're dealing with a public institution. Doesn't the public have any interest? Would you concede the government has interest in knowing the outcome of this DPA? I think that the public is interested. The public will will find out if the government ultimately decides to dismiss the case, and in fact the the the DPA has offered a fair bit of insight into what the government is looking at in terms of what it expects HSBC to accomplish in order to earn that dismissal. The DPA is actually, you know, to begin with, the statement of facts in the DPA is more detailed than what you commonly will get in a charging document or in a plea agreement, and it sets forth the conditions and the specific considerations that the government is weighing in making this decision. So in fact the government has actually offered the public a fair bit of transparency into a process that in the ordinary case often may take place behind closed doors. At the end of the day, under this DPA, the government has the authority unilaterally to extend the terms of the DPA longer, or at any point, I guess, to terminate the DPA if HSBC is not doing all the government thinks it should, and start the case up as a prosecution, yes? Yes. If that happened, would the district court, HSBC presumably, would have the the right to contest whether the government is in fact breaching its agreement, because HSBC contends it was doing fine? Well, this raises the question that I think Mr. Moore raised in his brief, that hypothetically in the future what happens if HSBC comes forward with an allegation that the government has acted in bad faith? If that happens, assuming that this court applies the procedure that it described in the Kahn case, HSBC would first have to make that allegation, the government would then kind of make a statement about it to explain its conduct, and at that point the burden would be on HSBC to actually come forward. Sure it would, but would HSBC not have a powerful argument at that point that the, suppose it says the monitor thinks we're doing fine, we have X years of reports where the monitor has said we're doing just peachy, and the government has just arbitrarily chosen for political reasons to go after us. Would at that point the district court have the right to require disclosure to it of the monitor's reports? In the event that HSBC made an allegation of bad faith that was sufficient to trigger a hearing, assuming that the Kahn case applies in this context, then yes, potentially that if the monitor's report is relevant to that bad faith allegation, it could at that point potentially be. At that point it would be a judicial document unquestionably, right? If the court is looking at it to adjudicate an allegation that the monitor has behaved in bad faith. Yes, I think it probably would be at that point a judicial document, assuming that the facts are as your Honor describes. And your point is that's in the future, that may never happen. Yes. And conversely, if, this is more interesting under the case law, if the government decides to dismiss the prosecution at the end of the DPA, under Rule 48A it requires leave of court. Now at that point, at least if there were some preliminary showing that this was by somebody, that this was not in the public interest, certainly there is some authority, and I don't know if there's any contrary authority, that the court would inquire into that. Yes, your Honor. I see, I see I'm over time, if I may answer the court's question. Yes, so your Honor, the court has a very small window to deny leave of court under Rule 48, and this court has in the past said that it may withhold that leave when a dismissal be clearly contrary to manifest public interest. And that also, but that also would be in the future, and would depend on some kind of preliminary showing, or some reason to think that the government is not doing what it's supposed to. Yes, your Honor, and it would have to mean, it would have to be something more than just a substantive disagreement with the government's decision to dismiss the case. So you, are you then saying that it could be the case that in the future that a monitor's report could be relevant to the judicial function? It is, it is theoretically possible, your Honor, but at this point it is speculative, and there is no basis for concluding at this point that that will come to pass. Did you resist counsel when the court, the district court asked for quarterly reports? We did not object to the district court's understanding of its authority in this case. We did, once the court made it clear that it had, it had ruled against us on that issue, we did agree to file the quarterly reports. And that was an interlocutory order that you might not have been able to appeal. The filing of the quarterly reports? Yes, I think, I think potentially, potentially. Well, I mean, because if it was a final order and you should have appealed, you might be bound by it, so I think you're supposed to say at this point that you had a purely interlocutory order, it didn't adjudicate anything finally, at that point there was no, no prejudice to anyone, something like that. Right, I think that's, that's right. On the, on the question of what is, on the issue of what is speculative, you're talking about much that could be speculative. Help me distinguish your situation from the situation in Amadeo, where the court held that a similar report was a judicial document, in part because if a party in that case ever saw, and I'm quoting of course, enforcement of or relief from any of the provisions of the decree, then the record to be considered surely would be included in the report. Why is this different? Well, the, the case that the court considered in Amadeo had an additional factor, too, that I think was quite relevant to the court's analysis, and that was the fact that the officer in that case was a court-appointed officer, and the court had an obligation to supervise that officer and make sure that the court officer was doing her duties under the, you know, that were required under the agreement, and so I think that was, that was certainly an additional factor that the court was considering in concluding that this was a judicial document. But your, the court did, though, also include the language your Honor referenced, as well as, I think, similar statements from the Erie County case. I, I know I am over time. I'm happy to go on. But it seems to me your, your complaint really is with the District Court's authority in the first place to ask for the monitor's report, isn't it? That's, that, that is the problem from which all of this has stemmed. Yes, Your Honor. You say in your opening brief on page thirty-four that even if the District Court's assertion of supervisory power were correct, the monitor's report still would not be a judicial document because the, the court was receiving quarterly status reports from the government and thus didn't need the monitor's report to ensure that the implementation of the DPA remain lawful. But doesn't that turn our relevance standard in, in, in, to, doesn't that turn our relevance standard for what constitutes a judicial document into a relevance standard? Uh, Your Honor, I think, I do think the quarterly report question is a closer one if the, if the court were to, to go down that route in deciding the case. But I still think, uh, that the question really is if, if the court, the, the question that the court is asking the government is, um, is, is the, is HSBC's compliance with this agreement, um, continuing to proceed in, in good faith? Or is, is, you know, is there, is the agreement going off the rails? And if the government says, tells the court, Your Honor, everything is going fine with the agreement, that does not give the court the authority to look under the hood of that statement from the government. The court can't, at that point, request, um, all of the documents that might have led the government to, to, to make that assessment and present it to the court, just as with other exercises of prosecutorial discretion where the government comes to the court and says, this is what the court, this is what the government has concluded in this case. The, the court does not at that point have authority to, for example, request, um, you know, notes from meetings with a defendant over potential plea negotiations, um, or anything like that. There's a long history of deferred prosecution agreements in the case of individuals, uh, must go back, uh, at least 40 years, uh, in which individuals, uh, who are charged with crimes, uh, if they're fortunate in the government's exercise of discretion, uh, may get the opportunity to have the case dismissed after six months or a year or 18 months of, uh, compliance with terms of probation. And now in those cases, the probation department supervises the, uh, uh, the individual. Is that right? Um, I, you know, I'm not sure Your Honor, but that's, that sounds like it would make sense. Um, and, uh, the probation department is an arm of the, the court. Uh, would that make any difference in the court's, uh, authority to inquire into how well this person with a drug problem or person whose crime was relatively minor and offers a prospect of rehabilitation? Uh, does the fact that it's the probation department give the court, uh, some authority that you argue it does not have here to look behind how well somebody's doing, uh, under a deferred prosecution agreement? I think if, if those deferred prosecution cases were cases where, uh, the agreement was that the court, the court, and specifically the probation officer would be monitoring compliance. It's the probation department though that does the monitoring, not the court. Right. But the, but I think in that context where it's a court officer, that would be more similar to the situation the court was addressing in Amadeo. Are you aware of any practice ever of a court actually exercising such authority or looking behind, uh, while the deferred prosecution is, uh, in play, uh, uh, actually asserting an authority and asking for reports from the probation department on a periodic basis, uh, or having those reports from the probation department publicly filed? I'm not aware of that, Your Honor. Let me, let me ask you this if I could. Um, let's, let's assume just, I mean, just purely for the sake of, of argument at this point, obviously that the, uh, monitor's report, um, is a judicial document and thus the, uh, First Amendment right of public access or the question of it applies to it. Uh, you argue, as I understand it, that the disclosure of the report would have a, um, adverse negative, uh, impact on cooperation with monitors in the future. And my question is why does that in your view represent a higher value than the public's assumed First Amendment, uh, right to view a judicial document of, um, of great significance in, in, in a case of intense public interest? Well, Your Honor, this is, uh, to begin with, I'd like to note that the quarterly reports actually, as if I'm sure the court has looked at it actually do summarize the, the high points of the monitor's report. And so the public actually does have, um, you know, access to a great deal of information already. And so the specific details from the monitor's report are not adding a lot to, um, public. But you don't really think that the court had the authority to ask for the quarterly reports either, right? No, no, Your Honor. We, I mean, that's a little hard for you to rely on that, right? Uh, you, you know, if you concede that the court has a right to order the quarterly reports, uh, doesn't that lead you very far down the road, uh, to, uh, uh, I mean, that's conceding that the court has a role to play. No, I definitely do not concede that in, in the government's view, this court should decide this case at the first step by concluding that the monitor's report is not a judicial document because the district court had no judicial function here. In that case, uh, what is your answer to, uh, Judge Castman's question about why, uh, the public doesn't have a higher interest than the interest in, uh, uh, getting good compliance with the monitor or something? So, so the court should only reach that question if it has disagreed with the government on the judicial document question, and if it has disagreed with the government on whether there's a first amendment right. If the court disagrees with the government on those two issues, um, I think we could argue in the court, even though in our view, the quarterly reports do not have to be filed, that this court would, would have, you know, by, by virtue of reaching that point in the, in the analysis would have disagreed with us, the court could then rely on the quarterly reports. But there's also, um, I, I do think that the, the, the importance of the monitor's confidential sources is, is critical here because the, the, the functioning of the DPA depends on the monitor's ability to properly, um, check HSBC and to see how HSBC is doing. And the entire... What, what about redactions? Well, the district court granted all the requests for redaction that the government and HSBC had. Yes. The government that, well, the, the, uh, the district court granted all the government's redaction requests. It did not grant all of HSBC's redaction requests, but before... Are there other categories of information that you would seek to redact at this point? Well, I mean, at this point it's hard to say. So the district court gave us three categories. And so our redactions were limited by those three categories. But when the district court ultimately announced its redactions, it actually added two more categories of, of material that it said it would want to redact. And so I think, you know, if, if we had not been fettered with redactions, with the specific categories the district court had described, we, we may have propositional, as I can't at this point, um, offer the court something more specific. I'm a little puzzled about the, uh, need for confidentiality to protect sources. Uh, the sources are presumably people within HSBC, right? Well, some of them are HSBC employees, but... And they would be afraid, uh, presumably, uh, of retaliation from HSBC if they blew the whistle on something, uh, that was going on that was improper, but HSBC gets the report, doesn't it, from the monitor? Yes. So what, what is inhibiting, uh, the, the sources from, uh, cooperating with the monitor if this becomes public? Well, the source... What are they afraid of? The monitors, the sources also included, uh, foreign regulators and, uh, people from other countries who were able to shed light on HSBC's conduct in those countries who were not necessarily HSBC employees, they were potentially government regulators and to get the cooperation of those persons, the I think that they, they provided information on a confidential basis. And the district court actually found that and found that that was an important consideration. It was redacted. Yes. Yes. I know I've gone a fair bit over time. You'll have time for... Thank you. Good morning, your honors. May it please the court. Paul Clement for HSBC. The monitor's report at issue here is an executive branch document designed to inform prosecutorial discretion, not a judicial determination. And I think in terms of the colloquy this morning so far, there are at least two factors that make the release of this, uh, document and treating it as a judicial document at this juncture, particularly problematic. Um, one is a consideration of timing. The other is the absence of any kind of threshold showing that you would normally expect before intruding into issues of prosecutorial, uh, discretion. As to the timing judge Lynch, I think you pointed out that, you know, in, in, in, in a someday world, um, you know, in a rule 48A motion where my clients were opposing the dismissal for some reason, you can imagine a scenario where the monitor's report might become relevant to a judicial determination and therefore a judicial document. We'd still have to talk about the rest of the first amendment analysis, but that's not now and this court, and in fact, you know, your honors decision for the court news day, I think makes clear that you have to assess whether something's a judicial document on a continuing basis at each juncture in the court's case. So at an earlier juncture, in that case, the magistrate made a determination that it was not a judicial document and this court went out of its way to say, well, but later when there was a contempt proceeding, you needed to look at it again. And I think here, so, so if there were, um, some concerns about unethical conduct, um, or something untoward, you would expect that to be raised by the government or one of the parties and that would therefore naturally come to the attention of the court. Is that. Well, as, as, as I think judge Lynch alluded to, it could also presumably come from Mr. Moore, a concerned citizen. It could come from the press, but I would say, and that really brings me to my second point, which is, you know, I don't think this court needs to decide today that the district court's supervisory authority over a DPA is absolutely zero. Um, because, you know, I can imagine that at least there's a supervisory authority to make sure there's not an ongoing fraud on the district court. But boy, one would not assume that lightly and one would require some kind of threshold showing. And, you know, the problem with the way that the district court proceeded here is, you know, a very, you know, large cart before the horse in the sense of without any, any reversing the presumption of regularity, exactly. Without any threshold showing whatsoever went right to the monitor's report, which of course, you know, with all due respect, I don't think the monitor's report, you know, obviously sheds a lot of light on whether there is a fraud on the court.  that you're at that juncture. And that would be a very different case, but that is not this case. And just to finish the point about the timing, I think part of the reason the timing is so important is sometimes in a case like this, where there is obvious public interest in the document, you can lose sight of what is the basic sort of raison d'etre for the judicial access doctrine, which is it's supposed to shed light on the judiciary. And of course there's interest in what the monitor's doing. And there's interest in how the executive branch oversees a DPA, but that's the primary office of FOIA. I mean, to the extent there's an interest in what the executive is doing, the way that a citizen deals with that is to make a FOIA request. Now to be sure in this context, I think there are a couple of exemptions to FOIA that are directly on point. So I'm not sure that that FOIA request would be successful, but my point is simply that the way the judicial access doctrine is supposed to work is to shed light on what the judiciary is doing. But all of that assumes, has to assume, that argument I think is potent, but it has to assume that the judiciary does not have a role in oversight of the executive in this situation, right? Because if it does, for example, comparable to a situation where there's a consent decree and the court is supposed to monitor what's going on, then the reports of the monitor could be important to assessing whether the judge is lying down on the job. So the argument depends on the notion that ultimately this is not a task, at least at this point, in this context for the judiciary to be doing. It depends on that. It also really depends, that's why I said there are really two threads to this argument. One is timing, one is the absence of a threshold showing. Because, you know, I don't, again, I don't think you have to assume for purposes of there's no supervisory authority. I think you could, you know, sort of assume arguendo that there's some modest supervisory authority, but it has to be triggered by some threshold showing that overcomes the normal sort of assumption of prosecutorial regularity. You can't make this showing without any information. Well, I think the court deals with this in other situations. I mean, Armstrong, you start with the presumption of, you know, prosecutorial discretion. But if you can make a threshold showing of racial discrimination, then you get some additional information. And then if that additional information shows, you know, something really untoward, maybe eventually you get to the crown jewels of a prosecutorial memo. But the problem here is that the district court judge sort of leapt to the end and said, you know, I think no court in an Armstrong situation would say, well, I suspect there might be something going on here, or at least have the Armstrong authority to oversee this. So before anybody showed me anything, I want to see all of the prosecutorial memos for the last two years. I mean, I think everybody would recognize that that was putting the cart before the horse and not respecting what is, you know, in this situation, I think if you look at the Speedy Trial Act, if you look at the judge's role here, there is a judicial role, but it's a small one. It's a modest one. And then the real purpose of these particular monitors report is all about informing the executive branch's discretion. I mean, not only are these documents directed to executive branch officials, they actually play a role in having consultation with the monitor 30 days in advance for the scoping of the monitor's report. So all of them have a position on the quarterly reports. I think that our position would be that the quarterly reports asking for that is in excess of the district court supervisory authority. But I also don't think you have to decide that in this case, which is a position in fact, right? And HSPC objected to the quarterly reports when they, when the district court first raised that notion. Yeah, no, that that's, that's correct. And I do think that asking for the quarterly reports sort of assumes the worst in advance and is probably in excess of the supervisory authority there is, but I also, you know, to be clear, I don't think you need to decide that today. I mean, I think you could easily decide this case on the assumption that the supervisory authority absent some threshold showing extends no further than requiring the quarterly reports. The DPA anticipates a process over time of HSBC improving its compliance, right? And starts from, well, you wouldn't have to come, I'm asking you to comment on this, but it starts from the assumption that HSBC was sufficiently out of compliance to warrant a criminal charge being filed by the government. Does that, I mean, so I'm guessing you have to comment on this, that it might well be that a monitor's report would highlight areas of progress and areas where progress is still being made or not perhaps satisfactory to the monitor. Is it your position basically that releasing this sort of information could be embarrassing to the company without really casting much light on how the And it all contemplates it's going to take a while. Is that, is that the idea? Well, I think that's fair, Judge Lynch. And I mean, this is, you know, this is a five year DPA. So presumably the assumption is that, you know, these problems aren't going to be solved overnight. And I think that, you know, there's a couple of points that follow from that. I mean, one is that, you know, if you ultimately got to the point of applying a sort of a first amendment balancing test, I do think there are some, you know, there's some real unfairness and cost to HSBC of disclosing this. I also think though that precisely because this is a five year process, it also envisions a process where when the monitor's report comes in, HSBC gets an opportunity to respond to that and to sort of point out where we think we're making more progress than maybe the monitor's report reflected. And of course, you know, that's a document that the judge didn't request. I mean, so, you know, part of the problem here is this is a very kind of, in the cosmic scheme of a five year DPA, this one document is a pretty odd thing to, for the court to sort of request, put in the public record. You would concede that at the end of the day, uh, at the, when the government, uh, hopefully from your vantage point moves to dismiss this case, uh, the court would have some role in looking back at how well this compliance idea has worked out, that would be a very different thing when the record is in effect complete than to have the district court, it'd be much more intrusive for the district court to be monitoring on a day by day basis, uh, is it time for the government to pull the plug or not on that? I think that's absolutely right. Your honor. I also think that, you know, look at that point, you know, the, the, the biggest threshold question is going to be whether HSBC is sort of satisfied with where the government is. Now, I'm not saying there wouldn't be some possibility in some, you know, fairly outlying hypothetical for somebody else to try to get in and raise an objection under rule 48A. I don't think it's ever happened in the history of the courts, but you know, we do have, uh, there's Amidon in the DC circuit. I don't know who instigated that, but the court itself apparently had some concerns with the government dismissing the case. Right. I think I, I thought it was sua sponte, but in all my, my only point is, you know, the, a lot of the dispute I think would be framed by the fact, you know, the starting question of whether the parties are in agreement, because I think one of your questions alluded to the possibility of HSBC thought that the bargain, it might, you know, make a motion to have the court look at the monitor's report. Of course, if it did that, it might, as your question just now suggested, only ask for the last two. Uh, it presumably would ask for those to be looked at in conjunction with, uh, HSBC's response to the monitor's report. And what would happen then with the monitor's report become a judicial document? It would. It would be transmogrified because HSBC asked, had a complaint? That's, that's how I understand the court's doctrine works, which is to say, I think. Government, if HSBC made a motion saying the government's acting in bad faith and the government said, you got to be kidding. Look at the monitor's reports. Uh, that, that would also make it a judicial document. It would, but I mean, you know, as I understand the court's doctrine, the way it works is, you know, this starts as what I would say, pretty obviously an executive branch document. If it becomes relevant to a judicial proceeding, it then is transmogrified. I mean, I, I know you use that term in a loaded way, but I think that's right. It becomes transmogrified in due judicial document. Um, and at that point you would still apply the first amendment tests. And I would still think we'd have a very strong argument, even in that context to maybe keep it, um, you know, on, you know, outside of the first amendment and a presumptive disclosure, but. Ordinary civil litigation, uh, documents that are produced by one party to another in discovery are not judicial documents, but they become transmogrified, so to speak, into judicial documents. If they are attached to a summary judgment motion, uh, and become the subject of, uh, a judicial decision, uh, uh, based on the material, uh, submitted by the parties, that's exactly right. And in the news day case, I mean, I think in some ways that's analogous. You had something that started out as an internal police investigatory report. It clearly started out as a document that was an internal document for the police department. Um, it was submitted as an attachment to a judicial document. That wasn't enough to convert it into a judicial document, but this court averted to the possibility that by the time you got to a contempt proceeding, uh, it might've been a judicial document. I think the court ultimately decided it wasn't, but the point is you definitely can have a document have its character change over the course of proceedings at the point that it becomes relevant to a judicial determination that then sheds light on the judiciary conducting its role. An argument that I don't think I've heard you make here today, but it's in your brief is that, uh, that even if, uh, the district court had, had some supervisory, uh, power over the implementation of the, uh, of the DPA, that power could not include the term, the ability to alter the terms of the DPA by making public a document that was, uh, explicitly intended to remain non-public, could that end our inquiry? If we, if we, I think it could, your honor. I think that's an alternative way to decide this case. I think it does in fairness, require the court to assume arguendo that it's a judicial document. And that's really the reason it hasn't come out of my mouth yet, because you know, most of the argument to date to this point has been about whether it is a judicial document. But even if it were a judicial document, I mean, at that point, there does seem to be a real bait and switch element of, you know, the, the, the actions in this case that certainly, you know, feel very unfair from the perspective of my client. Um, because if, if the court could, could request, uh, properly to review the report in the exercise of its supervisory power, then it would be a judicial document. Yeah, exactly. That's why this is really a, a, a second level argument. Um, the, the only loose end is just one, one, one question Judge Lidge had about the, um, sort of the, the, the sources. I mean, this is pretty down the line of analysis, but, you know, I think another issue for the foreign regulators and their cooperation is whether they're acting in compliance with their own, uh, bank secrecy laws. And so the promise of confidentiality, I think is an important comfort to foreign regulators in cooperating with the monitor, and I think that's why. To, to your last question, Chief Judge Katzman, that's why this monitor's report had the language about confidentiality, even though others don't necessarily have that language. It was particularly important here to get the foreign regulators cooperation. Thank you. May it please the court, uh, Dave Schultz for the intervener, Hubert Dean Moore Jr. Um, I think it's clear from the, the argument up till now that a key question before the court is whether this report is relevant and useful to a judicial function. But before I turn to that, which I think is the disposition, I'd like to deal with the two points that were just raised by Mr. I think there's some confusion in his position. First, the question of timing. Uh, he's argued that a document can be submitted to a court at one point and not be a court record until some future point, this court specifically rejected that notion in Lugos. It said when something's submitted with a summary judgment motion, you don't wait around for the judge to decide if he's going to consider it relevant or not. It becomes a judicial. But it is relevant. Uh, it doesn't matter whether the judge relies on it because the court should be, the public should be in a position to say the judge should have relied on it because it was submitted to the judge and the judge should have taken action. That's quite different than here, isn't it? No, no, but, but, but my point is just on the timing question. The suggestion was that a document can come into a court and not be a court What, what the Newsday court held was not that something was a document at one point and wasn't another. It held that a document produced in discovery was not a judicial document. When, and then the second case, the reason that second case is a little different and was relating on that. The document was never submitted to court. The issue in Newsday was whether something that was test subject to testimony in a trial could make the document itself a court record. So there was not a timing issue in that case. All of the decisions, uh, as I read them of this circuit, uh, uh, make clear that the mere fact that somebody staples something to some other judicial document and files it in court does not make it a judicial document. Exactly. So, so the, the fact that this was filed in court at the judge's request or does not necessarily make it a judicial document if the court did not have a role at that time in supervising this process, or at least did not have a role that had a colorable basis for, uh, uh, demanding the document. That's exactly right. And that's why I was saying at the outset, I think the key question here is what was the role of the court? And I'd like to go back. That's why it's a timing question. You see, uh, it might be at some other point that the judge would have a role that would authorize or require, uh, scrutiny of these documents and their submission by one of the parties at the court's demand or on their own. But that doesn't mean that the fact that the judge just said, I'd like to see something, makes it a judicial document. I would disagree with you to this extent, judge, that the case law in this circuit says that when something is submitted, the test of whether it's judicial document, is it relevant and useful to judicial role? It doesn't have to be now. It could be in the future. Take the Erie case. In the Erie case. Wait, excuse me. And you're really saying that if a judge says, I anticipate that somewhere down the road, this issue could come up, uh, therefore I'd like, uh, examples, ordinary civil litigation, there's going to be a summary judgment motion. At some point, the party has already told me that the defendant wants to make such a motion. And at that point, a lot of these depositions are going to become relevant. I'd like all the depositions in the case to be filed in court today. Because someday it might, it's going to be relevant for me to look at. And I want to sort of get a sneak peek in advance. That makes them judicial documents? Potentially. I think there could be some level of abuse, but judge, that's exactly the circumstance in Erie, right? In Erie, you were talking about monitors reports that were submitted to the court as part of a program to reform the jails. There's not a scintilla of evidence in the record or the decision of this court that they were ever looked at by the judge. The question was, they were. But because the judge had an obligation to review those reports, or had an obligation to review the performance of the monitor, the public would have an interest in looking to see whether the judge was asleep at the switch by not looking at documents that were submitted to the court for that purpose. Can I, can I, are you, are you? Yes, judge. Um, I wanted to, to, to bring you back to the question of, uh, the presumption of regularity and whether, um, what the district court did was to turn the presumption of regularity on its head, what the district court says is, uh, it is easy to imagine circumstances in which a deferred prosecution agreement or the implementation of such an agreement. So transgress the bounds of lawfulness or propriety as to warrant judicial intervention to protect the integrity of the court. It seems to me that that, uh, arguably, um, turns the presumption of regularity on its head. Uh, could you respond to that? I don't think so. Let me, so let me go back. Cause I think that this is related to what judge Lynch was asking, which goes to the question of what was the proper role of the judge? What was the useful, um, uh, to what relevant to, to what judicial function was the document relevant and useful. And the, the appellants in this case, try to argue that this is judicial overreach into a, uh, realm that's exclusively left to the prosecutors. And the fact is just the opposite is true. What, what is going on here is not judicial overreach. It's prosecutorial executive branch, overleaf. Think about, uh, any case that's brought when a charge is brought and filed in court, that is a bright line. You know, the prosecutors can do a lot of things while they investigate. There's grand jury secrecy. What, what do we, what, what, what do we presume at the outset? Do we, we presume that the prosecutors are behaving in good faith? Sure. But, but the question is they come to court and what happens on what is the judicial role at that point? Now, if you set aside the, this development of the DPA, that's, that's really grown up in the last decade or so with big institutions, any case in which there is a criminal charge filed ends either with a trial and a sentence or a plea agreement. I mean, sometimes they might withdraw it, but that's, that's what happens. And in every case, once the, the plea is, sorry, the charge is filed, the court has a role in understanding what the sentence is, uh, what the plea is. The court is the, is the body within our government that decides whether penalties are appropriate. And what's going on in the DPA case is you have the government bringing charges and saying, we're going to decide the penalty and you have no role at all. We'll decide the penalty. And if we agree that the penalty is appropriate, we'll withdraw it. It's the executive branch arrogating to itself, fundamentally a judicial process. So for 40 some years, if not longer, uh, the government has, uh, engaged in such, uh, deferred prosecution agreements with ordinary, uh, uh, wrongdoers, uh, filed criminal charges and then, uh, agreed to defer prosecution, uh, pending completion of a period of probation, uh, at the end of which the, uh, uh, government moves to dismiss the charges, uh, you're suggesting, I take it that the judge who didn't think it was such a good idea, uh, to let, uh, addicts go through a period of, uh, uh, treatment. And if they successfully completed it, have a minor criminal charge dismissed, uh, could insist on quarterly, weekly, daily reports on the, uh, how the person is doing, uh, and then, uh, uh, argue or hold perhaps that the government should have revoked this DPA because aha, he lapsed at a particular date that follows from your argument, does it not? I think in, in, in many cases that could be true judge, but and has the, and has any court ever attempted to exercise that power to your knowledge in the entire history of the thousands of deferred prosecution agreements that the government has entered over the years? I don't know that, but I do know that in the professor Garrett's brief, who has collected all these deferred prosecution agreements, he makes the statement that as a routine practice, these sorts of reports, when there's monitors involved do get filed with the court. So there is a history, at least T points to one of these things being public, whether a court has agreed that they were not confidential, as opposed to in this case, where it agreed that they, I believe it is in the, that it's part of the agreement in those cases that they'll be made public. But my point is that there's a history of these things being public, you know, and look at it from the standpoint of the role of the judge. If there were a plea, a judge has very limited powers, right? But, but he has the authority to reject a plea. If he says there's no factual basis to support it, or if the sentence is too lenient for the conduct that's actually alleged, it's rarely exercised, but he has that power. And the judge has the power, I would think, I don't know that everyone on the other side of the table would agree, at the end of the day, when the rule 48 motion is made to engage in at least some scrutiny, we could argue about exactly what that would be, but during the period in which the prosecution is suspended, and the only thing the judge has done is to enter a mandatory speedy trial exclusion under the Speedy Trial Act, what, I'm just looking for what, why do, that's different than, than monitoring a plea, because when the plea comes, the judge is being asked to enter a judgment. When the dismissal motion comes, the judge is being asked to enter a judgment. But what gives the judge the authority to review the internal prosecutorial decisions that are being made along the way to that point? Well, there's two things that Judge Gleeson pointed to, and I think he was correct on both. One is the inherent supervisory of the court while the case is on his docket. This was an unusual situation where there was going to be a case sitting for five years. It was a case that drew incredible public outcry that the government had acted inappropriately in letting people off the hook. And he basically said, look, I have the inherent supervisor power. He quoted, he quoted Justice Brandberg saying that it's limited. He said, I have a very limited role at this point in the prosecution, but I have inherent power. I'm not a potted plant. While this is on my docket, I have the power to, to ensure that there is respect for the law, to promote confidence in the administration of justice, and to preserve judicial processes from contamination. He also acknowledged that it was a novel approach. In this context, and I think that goes to Judge Lynch's point that, that, that there hasn't been a great deal of litigation about how these factors apply in a DPA, but he didn't point just to that inherent power that this case was going to sit down. He pointed to the Speedy Trial Act and he said, you know, there, there are standards here. The Speedy Trial Act says I'm only to agree to a waiver if I believe that in good faith, the defendant is, is attempting to reform. And what he said is this is going to be on my docket for five years. I'm giving you a contingent Speedy Trial waiver, but I want quarterly reports to know that that's what's happening, that the, that the defendant is reforming. Because, you know, if I had a drug addict and I was going to let out because he was going to halfway house and there's reports were coming in from the, from the probation office or someone else that, you know, three weeks in a row, they failed a drug test. The judge wouldn't have to sit there. He could say, I want to know what's going on. The DPA were, were six months. Could he assert a, um, uh, uh, supervisory power? I'm sorry, judge. The fact of the five years, is that what gives him the inherent authority? The fact that there are any limits, the fact that it was going to be a two year suspension, your suspension. I think that's a factor in his, his decision about as, as a court. I mean, his whole role was look at the court, the government didn't do a non-prosecution agreement. They didn't work out a deal. They came to court for a reason. They had a public benefit. They got a public benefit from filing charges and the defendant got a huge benefit. Because it was going to avoid prosecution. No, it would have gotten a huger benefit in a non-prosecution agreement. Sure. Absolutely. And there would have been perhaps more public outcry about whether that was absolutely. And so they came to court and they're using the power of the court to say, trust us, or you can trust, you can rely on the fact that we've come to court and we've made these charges to know that the justice is being fairly administered. And judge Lynch basically said, fine. I agree. I I've read the DPA, but I want quarterly reports to be sure that I'm not sitting here for five years while my, uh, jurisdiction, my forum is being abused because they're off doing things. And there was a whole discussion about there needs to be some threshold showing. There was a threshold showing what, what got judge Lynch, sorry, excuse me, judge Gleason to request the monitor's report in this case was a quarterly report. He got several of them, I think six or seven before he asked to see this report. And what the month of quarter, the quarterly report said is, um, he's finished this first full year monitors report. And you know what? Things are going very slowly. He has serious concerns. Um, and in fact, uh, the, the, an internal audit was rejected by senior management who don't understand the proper role of internal auditors. And he said to himself, apparently, I need to know whether there's really a good faith effort here. And he said, I need to see that report to understand what you're telling me in the quarterly summary. That's what prompted it. There was a threshold showing of a problem here, and it was totally appropriate for him to take that step. The other point I ask you moving to the year, the first amendment, um, analysis regarding the, uh, experience prong of, of, uh, the inquiry. Uh, my understanding is that you analogize the DPA to a, to a plea agreement, um, to which the public traditionally has, has a right to, to access, and I understand that. Uh, and you assert that documents filed in connection with plea hearings or judicial records, I'm quoting subject to the constitutional access, right? So my question is what documents filed in connection with a plea hearing is the monitor's report analogous to? Uh, it could be, it's analogous to several things that would happen after a plea. Most, most typically there would be a sentence and frequently a judge in whether to accept a plea or not, uh, will put off certain, uh, conditions of sentencing until he gets some reports about what's going on. That's exactly the type of information that is in this monitor's report. I'm sorry, judge. Probation report. You mean? Yeah, yeah. The probation reports would be one, but, but 5k letters from the, from counsel and other things about what, what the defendant's doing that the court says, I need to know this when I evaluate the plea and I, and I make the sentence, that's what's going on here. It's very similar to that. And, and on the experience prong. Isn't the primary purpose of the monitor's report to inform the, the government's determination as to what to do in this case? That may well be, I would say as a threshold question, the intent for the creation of a document is entirely irrelevant to the question of whether it is a judicial record. The issue is, was it submitted to court and is it relevant and useful to a judicial function? The rest is totally outside the concern of this case. And to go back to the experience prong, I just wanted to, because there are several points there. Um, the first is that there is anecdotal evidence that these types of reports have been made public in the past in, in professor Garrett's brief. That's the type of thing this court recognized in Erie as sufficient. But more than that, it is similar to the types of things that happen at a plea hearing and a sentencing hearing. And what this court said in the New York transit authority cases, when you have a new, essentially a new procedure like this, you look at how things function in the fast to see whether it would apply, but beyond that, even if you were to conclude that this wasn't like anything else, what this court said in the Suarez case is when you have new processes, the experience prong is not this positive. So you would look to the logic prong. And as we lay out in our brief, uh, it clearly is a situation where, uh, the first amendment right attaches to this. So I would just make the point that, that Mr. Clement said, uh, I heard him say, and the government too, that there is some role at some time for the judge. He described it as, uh, uh, he said, sure. I'm not going to say there's no role. It might be a small role. It might be a modest role. I would submit that the issue for the court is not how big the role is, but does the judge have a judicial role? If there is a judicial role, the question is, is this report relevant and useful to that role? And if it is, then these rights follow. Now, how important the role is might be relevant to a common law analysis if you were doing a balancing, but for the first amendment analysis, if it's, if the judicial document and the first amendment right applies, you don't look at those issues about how immediate it is or how important it is. That was the learning of Lugos. That's the learning of Erie where there was no evidence that the judge looked at it at all. And I think that the judge Gleason understood properly the very narrow role that a judge plays at this stage in a prosecution, um, and exercise his authority appropriately. He didn't act until he had concerns that needed to be addressed. And then he properly analyzed the rights of the public, uh, and the parties. And, uh, there was no abuse of discretion on the issue of, of foreign regulators. He withheld five out of the six appendices. I don't know what was in them. Um, and on the question of whether the government, whether they had a fair chance to, um, articulate the redactions, I just want to respond to that because his order saying, tell me your redactions picked up every category. They said they had concerns about it. He said, okay, tell me what you want. The only one he left out, I believe, was the concern that they raised that, um, you wouldn't be, that it would make it difficult for future monitors to be able to function. And he said, that's not my concern. That that's not a relevant concern in the context of what we're going on here, because prosecutors have lots of options available to them. What I want to know about is the foreign regulators, the employees, uh, criminals who might have pathways. He accepted all those. He accepted every redaction proposed by the government. And there was no abuse of discretion. Thank you. If we were to say that if we were to determine that the first, uh, amendment, uh, right of, of public access doesn't attach just arguendo, are you, uh, uh, then contending that the, the common law right of access could still support? Sure. Absolutely. Um, there is a, certainly if you decide there's a judicial record, the common law right does attach those. That's the same determination. And then the only question is how important was this to a judicial function and how important is the public interest? And I would submit that judge Gleason, while, while there's a limited judicial role, he viewed this document as critical to his performance of that role. So I think we certainly get, get, uh, very high on the scale of the importance to the court. And in terms of the public interest, if you read professor Garrett's, uh, brief about all the concerns about what the government is doing with DPAs. If you read the better markets brief about the implications of what's going on here for the regulation of the financial markets, there is huge public interest in understanding what is happening in this case and what the judge is doing with this case. So I think even under a common law analysis, uh, the order should be affirmed. Thank you. I just like to make two quick points. Uh, the first point is that judge Katzmann, you asked about what the analogy to the monitor's report would be in the plea context. I think that the closest analogy would be to, um, notes or memoranda describing meetings between the prosecutor and the defendant leading up to the plea, uh, where the defendant is providing the government with information and the government is making an assessment and internal deliberation about how that information should factor into the government's decision regarding whether to dismiss some of the, um, some of the charges in the case. I don't think a better analogy is the probation report. I think if there were, if there were a probation officer involved, I think that, that, that could be potentially and indeed the probation report is secret. Yes, yes, it is your honor. Um, so, so I think that there is, I think there's, I'm not sure that's a judicial document either. So, so I would agree with that. Uh, the other point that I'd just like to make is, uh, relates to rule 48. I see that I'm at the end of my minute, so I don't, I don't want to finish your Uh, the, the, the quick point is just that whatever small window a district court has to deny leave of court for a rule 48 dismissal motion, uh, is being clearly contrary to manifest public interest. That does not give the court the, um, opportunity to look back at whether the government is properly exercising its discretion and deciding to, to dismiss the case as a substantive matter. There may be other, other things that'd be clearly contrary to public interest, but that would not be one of them. Thank you. Thank you, your honor. Just a few very quick points in rebuttal. My friend on the other side relies on the Erie case, but that case sort of distinguishes itself because this court went out of its way to emphasize at least twice that, that, that, in that case, the district court had a sua sponte authority to take action, to modify the consent decree. So, you know, that's, that's a classic case where those were judicial documents, but certainly I don't, you know, certainly don't think whatever supervisory authority there might be to avoid a judicial decision. A fraud on the court, you have anything like that sua sponte ongoing authority to monitor the prosecution here. Second, just to echo the point about rule 48a. I mean, I do think that at that time period, you might have the report potentially come in as a judicial document, but even then I think you would still have to overcome the threshold of prosecutorial discretion and the like. So unless there was an issue that made it relevant, um, it still wouldn't come in. I just don't want to be left with the impression that it's automatically going to come in at that juncture. And then the last thing is very much a detail, but my friend on the other side said that what Judge Gleason did is give a contingent speedy trial waiver. That's actually not what he did. He actually bifurcated the inquiry and said that he gave the speedy trial waiver. He gave that without a doubt. And then it was a supervisory authority where he purported to give contingent approval to the DPA. And that is exactly where we think he overstepped his bounds. Whatever sliver of supervisory authority there is, it's not an authority to approve or disapprove the DPA. The only district court judge that has tried to exercise that authority was mandamus by the DC circuit in the Fokker case. Thank you. Thank you all for your excellent arguments. Um, Mr. Schultz, am I correct that you are appearing pro bono? The court thanks you for your service. The court will reserve decision. Thank you.